JAMES M. YOUNG, Trustee, v. JAMES R. YOUNG.

*Rent Accruing on Devised Land—Rent in Arrear at Time of Conveyance, to Whom Due—Contract—Evidence.*

1. Rent accruing on devised land, after the payment of testator's debts and legacies, belongs to the devisee.

2. Rent in arrears at time of conveyance of land does not pass by the deed.

3. In the compromise and settlement of differences between the beneficiaries under a will, in pursuance of which certain real estate belonging to one of the parties as residuary legatee was conveyed by such legatee to another beneficiary, the fact that the latter, in a paper-writing signed by her (or her agent) alone, agreed that past-due rents of lands other than of the land so conveyed should belong to the grantor, is not, in itself, evidence of an assignment to the grantee of such past-due rents of the lands so conveyed, but a paper-writing so signed was competent evidence to be submitted to the jury in connection with other testimony tending to show that it was a part of the settlement between the parties.

This was a CIVIL ACTION, tried on appeal from a Justice's Court at the May Term, 1894, of the Superior Court of VANCE County, before *Battle, J.,* and a jury.

The plaintiffs warranted the defendant for $188.15, with interest from 18th October, 1892, for money had and received by the defendant to plaintiff's use, upon the following allegations:

That R. E. Young died March 14, 1892, leaving a will. That at the time of his death he owned a storehouse and lot, tenanted by Barnes, Stainback & Co., who were paying $27.50 per month, from February 27, 1892, and who furnished about the burial of said R. E. Young, and other disbursements to his use, $23.50, which should be applied as a credit upon said rent. That plaintiff Ann Eliza Young is sister and next of kin named in R. E. Young's will, and James M. Young, her son, is trustee of her property for her.

That the debts of R. E. Young and the legacies under his will had been paid, and his executrix filed her final account on October 19, 1892. And said Barnes, Stainback & Co.'s storehouse ceased to be a part of R. E. Young's estate on October 18, 1892, the executrix never having received or accounted to the residuary legatee for the rent.

That the defendant, claiming to be agent or manager for said executrix, collected seventy-five dollars or more of the said rent in the summer of the year 1892, and that Barnes, Stainback & Co. made an assignment to A. C. Zollicoffer in December, 1892, preferring the defendant for the balance of the said rent up to October 18, 1892, and that said Zollicoffer paid the same to the defendant in April, 1893. That plaintiffs, by their agent, demanded the said money of the defendant about November 1, 1893, and again March 15, 1894, and that he refused to pay the same.

The defendant denied the alleged indebtedness and that he had received the money as alleged; and he denied that the plaintiffs were or are entitled to recover or collect the said rent at all, and also claimed that in the settlement of the estate of R. E. Young the plaintiffs surrendered and abandoned all claim to said rent.

The plaintiffs, in support of their contention, offered evidence as follows:

It was admitted that demand had been made upon defendant for the amount of rent alleged to be due, and the demand was not complied with. It was admitted also that Mrs. Ann E. Young, the plaintiff, had conveyed all her property in trust to her son and co-plaintiff James M. Young.

Mr. T. T. Hicks was then introduced as a witness for plaintiffs, and testified as follows:

"On October 18, 1892, Mrs. W. W. Young and her then husband, Dr. Young, raised the money and paid off the legacies under the will of R. E. Young, and also his debts, except some small debts personally paid by his executrix and em-

braced in account that day filed. Two-thirds of the legacy in favor of the executrix, Pattie F. Young, was paid in land, including the Barnes, Stainback & Co. storehouse at $3,750. Up to that time the *feme* plaintiff, neither she nor her husband, had exercised any control over the real estate of R. E. Young. At once after the settlement Mrs. Pattie Young, through her agent, J. R. Young, turned over to me as attorney for Mrs. Ann Eliza Young a large pocket-book containing a number of evidences of debt, notes, bonds, chattel mortgages, etc. There was a judgment of record against W. T. Cheatham, Jr., which it was then stated would be assigned of record to the *feme* plaintiff. That settlement was made in my office October, 1892, the day Judge Furches spoke here. This storehouse was a part of R. E. Young's estate, owned by his estate up to that time, when it became the property of his wife. She made a will next day and devised it to J. R. Young, subject to certain provisions in the will, and died about a week later. Very soon after December 21, 1892, when Barnes, Stainback & Co. assigned (at the instance of Dr. Young), I called on the defendant for this rent. He did not then deny that he had received the rent, nor affirm that he had. Again, in March, 1894, I made written demand on him in behalf of the plaintiffs for that rent."

Cross-examined, he says: " This rent was not discussed ; never discussed by me with anyone prior to settlement of October, 1892, this past-due rent. No other matter except this was kept open, but I don't think the pocket-book was delivered till a day or two later, but agreed on that day to be delivered. All that was agreed on has been done. I wrote the paper marked ' A.' When I made demand on Jas. R. Young he said all that had been settled, ' that matter has all been settled '; and I understood he insisted the rent belonged to Mrs. Pattie Young, because she had bought the house. The date of the first demand was about March 1, 1893 ; it was before March 11, date of Dr. Young's death.

March 15, 1894, was the date of the next demand.   There was a violent lawsuit going on over the will of Mrs. Pattie Young, which will was established in February, 1894, by withdrawal of appeal."

Here the paper marked " A " was shown the witness for identification.  The paper is in handwriting of Mr. T. T. Hicks and signed by J. R. Young, agent, and the paper was at this time offered in evidence by defendant.  Plaintiffs objected to the introduction of the paper because of its incompetency and irrelevancy as testimony, and because it was, plaintiffs claimed, a declaration of defendant in his behalf.

Objection overruled, and the plaintiffs excepted.

This paper-writing ( " A " ) was as follows :

" The tenants of the lands of D. E. Young, I. J. Young and R. E. Young, lately in charge of R. E. Young, and also the store and town property, are to account to and deal with Dr. W. W. Young and wife for past-due rents, and from and after this date one-half the rents of the Harris 607 acres for this year to go to W. W. Young—Barnes, Stainback & Co.'s store excepted.

" PATTIE F. YOUNG,<br>
" *By* J. R. YOUNG, *Agent.*"

October 18, 1892.

The plaintiffs objected to the introduction of this document by the defendant at all, and insisted—

1. That it was nothing more than a declaration in defendant's favor made by defendant.

2. That it did not appear to have been brought to the knowledge or attention of the *feme* plaintiff or her husband.

3. That no evidence was offered to show that the attorney, in whose handwriting the paper is, had any authority to make it, or to yield to the defendant, impliedly, by accepting it, the then past-due rents in the Barnes, Stainback & Co. store.

4. That it had no bearing on the issue, the Barnes, Stainback & Co. stores being expressly excepted from the operation of the paper.

5. That there was no consideration shown for the alleged release of such past-due rents.

These contentions were all urged again after the close of the evidence, and the Judge was requested by the plaintiffs to direct the jury to disregard said paper entirely. And again, after the verdict, the same contentions in regard to this paper were insisted upon by the plaintiffs when they were asking for a new trial. In each and every instance the decision of the Court being against the plaintiffs, they duly excepted.

The Judge intimated no opinion whatever as to what weight should be given to the paper-writing by the jury, but laid before them fully the contentions and explanations of the parties in regard to the same.

Mr. Hicks testified further in regard to the paper:

"After we finished the settlement of October 18, and after Mr. Zollicoffer and Dr. Young had gone, I think I said to Mr. Young that, as he and Mrs. Pattie Young had been collecting the rents, and as they were to be collected thereafter by Dr. Young and wife, we ought to have a paper to show tenants, and J. R. Young suggested that I write such a paper, and I did so. Of the 607-acre tract, Mrs. Pattie Young owned one-half, and the other half her husband, and that half she took for $1,500. As rent for that was then due, it was expressed in the paper. After the paper was written, Mr. J. R. Young suggested that the store still belonged to Mrs. Pattie Young and should be excepted, and it was. Nothing was said about giving past-due rents on Barnes, Stainback & Co.'s store to Mrs. Pattie Young, and there was no consideration for it. Dr. Young had never collected any rent on the store."

James R. Young, a witness for the defendant, testified as follows:

"After the death of R. E. Young I was agent of his wife, who was his executrix. I took charge of his affairs June 3, 1892. I received from Barnes, Stainback & Co. $80.36, and an account of $52.20 against the estate, making $132.50 on the rent. Sometime in the summer I received a note, due in sixty or ninety days, for $75 on rent, which was not paid at maturity but renewed. This $80.30 was accounted for by me as agent for Mrs. Pattie Young."

This last statement as to $80.30 was objected to by plaintiffs, on the ground that the account as filed by executrix is made out by this witness, and he is estopped to deny his own act. Objection overruled, and plaintiffs excepted.

" It was not put in the final account, because under the agreement of October 18 Mrs. Young was to have this rent. In my settlement with A. C. Zollicoffer, as trustee of Barnes, Stainback & Co., taking up what was due to me and to me as agent of Mrs. Young, I received all the preferred debt except $35 or $36. The rent for January, February and March was at $27.50 per month ; the rent for balance of time was at $25. I reduced the rent at demand of parties. I was acting as Mrs. Young's agent. In the settlement of the estate of R. E. Young there arose a controversy between Mrs. Pattie F. Young and W. W. Young and wife. It was settled by an agreement in writing. Part of it was reduced to writing. Dr. Young and wife insisted on her taking her legacy of $10,000 in real estate. In discussing this matter, Mr. Hicks said he was willing for Mrs. Pattie Young to receive rents on real estate in lieu of interest if she would do this. It was agreed that she would take two-thirds of her legacy in real estate, and the deeds were executed accordingly. The parties met at Mr. Hicks' office October 18, 1892, and the final account was presented and examined by Mr. Hicks, attorney for Dr. W. W. Young and wife, and he said it

was satisfactory, and that account does not contain any entry
of rent received from Barnes, Stainback & Co.'s store. At
this meeting, October 18, 1892, in his office, Mr. Hicks stated
that he ought to have a paper in reference to the rents. I
told him I thought so too, to draw it up and I would sign it.
Before this it had been agreed that the pocket-book should
be handed over, and the Cheatham judgment should be
assigned, and everything settled except the rents, and Mr.
Hicks said he ought to have the paper. We had already
that evening discussed the matter of rents. He wrote the
paper marked 'A,' all except last line, and handed it to
me. I told him he ought to put in there that the Barnes,
Stainback & Co. store was excepted, and he did so, and I
signed it as agent for Mrs. Young. I agreed in the discus-
sion to pay over the rent on the 607-acre tract; that was
put in the paper ; and I insisted on the last line being put
in. I wanted the whole thing to be settled then and there.
Dr. Young had never collected any rent on that store.
Deeds were signed and delivered on that day. I thought
everything settled, and heard nothing further of it until
February or March, 1893, when Mr. Hicks made demand on
me for this rent. I told him it was not owing, that it was
included in the settlement, and that Mrs. Young was to have
the rent. The rent I actually got and not accounted for to
Mrs. R. E. Young amounts to $112.50. I never collected
any of this rent in my individual capacity."

On cross-examination he stated : "Mrs Pattie Young made
her will, and died within ten days after this settlement. I
was her principal legatee and devisee. Eighty dollars and
thirty cents collected June 3, 1892, and paid to her October
19 in a settlement I had that day. I paid it to her, as the
receipted account shows."

Defendant closes.

Mr. T. T. Hicks further testifies for plaintiff: "I had no
authority to agree to allow Mrs. Pattie Young rents in lieu

of interest on her legacy. I insisted all through the discussion that the legacy would not bear interest till after a year from R. E. Young's death. Two legacies in will of $1,000 did not begin to bear interest till October 18, 1892. Willie Harris' legacy paid that day; no interest on it. I did not agree that Pattie Young should have rent on any property in place of interest on her legacy."

On cross-examination he said: " I was attorney for Dr. Young and wife in making the settlement. Dr. Young was also present most of the time. There was no formal meeting for doing anything without his presence. The question of interest was discussed. Mrs. Pattie Young brought suit on legacy. It was settled that interest should only count from October 18, 1892."

Plaintiffs close.

The Judge then charged the jury, fully and distinctly explaining the contentions of plaintiffs and defendant, and charged the jury further that it having been shown that the defendant received the rent, the burden of proof shifted to the defendant, and he must satisfy the jury by the predominance of the testimony that he had paid it to the plaintiffs, or that in some legal way the plaintiffs had waived or parted with their right to receive it. No special instructions were asked by either plaintiffs or defendant, in writing, nor before the case was given to the jury. After the jury had taken the case, and being out some minutes, they requested to be allowed to see the paper of October 18, 1892, marked "A," and the agreement of September 30, 1891. The Judge asked if there was any objection by plaintiffs or defendant, and both parties consenting, the request was allowed by the Court.

There was a verdict for the defendant. Plaintiffs moved the Court to set aside the verdict and grant a new trial for error of his Honor in refusing to charge the jury as requested by plaintiffs, and for other alleged errors as above set forth. Motion refused, and plaintiffs excepted. Plaintiffs moved

for judgment upon the admissions of the defendant, notwithstanding the verdict for $194, less the $80.32 paid by defendant to Pattie H. Young. Motion refused. Plaintiffs excepted.

Judgment was rendered for the defendant, and plaintiffs, having excepted to the several rulings and judgment, appealed.

*Mr. T. T. Hicks,* for plaintiffs.
*Mr. Walter A. Montgomery,* for defendant.

MACRAE, J. : There is no dispute about the fact that the *feme* plaintiff was the residuary legatee and devisee of the estate of R. E. Young, deceased, and it is made to appear that all of the debts and legacies have been paid, or secured, to the parties entitled and the estate settled. Now these past-due rents, accrued after the death of the testator, had ceased to be *rents*, or in anywise incident to the land, and had become a debt due from Barnes, Stainback & Co., personally, to the owner of the said store. *Jolly* v. *Bryan*, 86 N. C., 457. The owner of the store was the residuary devisee, the *feme* plaintiff. By deed dated October 14, 1891, but, by the testimony, not delivered until the 18th of said month, the *feme* plaintiff conveyed said land in fee to Mrs. Pattie Young, and the rent in arrear did not pass by said deed.

The only question raised by the exceptions is whether, by the final settlement and compromise of differences between the beneficiaries under the will of R. E. Young, it was agreed that these sums past due for rent of the said store should belong to Mrs. Pattie Young, and whether by the said settlement they were so assigned. This paper-writing alone, signed by Mrs. Pattie Young, through her agent the defendant, in which she agreed that certain other rents were to be paid to the *feme* plaintiff, could not by force of the exception

115—8

amount to an assignment to herself of money then due and owing to the *feme* plaintiff.

But there was evidence tending to show that the deed of compromise and settlement executed on September 30, 1892, was supplemented by a further and independent agreement on the 18th of October, when the arrangement was concluded and the deed from the *feme* plaintiff and her husband was delivered to Mrs. Pattie Young. The testimony tends to prove that Mr. Hicks on the one side as attorney for the *feme* plaintiff, and the defendant on the other side as agent for Mrs. Pattie Young, were authorized to and did make the settlement. Whether in that final settlement there was an agreement that Mrs. Pattie Young was to have these past-due rents, which otherwise belonged to the *feme* plaintiff, was the principal question. His Honor submitted but one issue to the jury: "Is the defendant indebted to the plaintiff, if so in what sum?" And under this issue all matters in controversy could be easily presented.

The defendant contended that, by the agreement between the parties through their attorney and agent, these past-due rents were to be paid to Mrs. Pattie Young.

The testimony was conflicting as to whether the paper in question was signed before the final settlement was concluded, or soon afterwards. It was not in itself, as we have said, an assignment of said past-due rents, even when accepted by the *feme* plaintiff, but in connection with all of the other testimony we think it was competent evidence to be submitted to the jury, if the jury were satisfied that said paper was a part of the settlement. His Honor placed the burden where it belonged, on the defendant, to show that the *feme* plaintiff had parted with or waived her right to the money in controversy. He explained the contention of the parties, and submitted the same with all the evidence to the jury; there were no prayers in writing for special instructions; and the exception to the admission of the paper-writing, and that

to the testimony of the defendant as to his disposition of the rents collected by him, were both based upon the theory that there was no evidence proper to be submitted to the jury to satisfy them that the *feme* plaintiff had given up her right to the said past-due rents.          There is no error.